1

2

3

4              IN THE UNITED STATES DISTRICT COURT

5           FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7    ROSALYN M. BOYKIN,                         No. C 05-05079 SBA

8              Plaintiff,                       **ORDER**

9    v.                                         [Docket Nos. 11 & 12]

10   JO ANNE B. BARNHART, Commissioner of
     Social Security,

11
               Defendant.

12   _____/

13

14          Plaintiff Rosalyn M. Boykin brings this action pursuant to the judicial review provision of the

15   Social Security Act, 42 U.S.C. § 405(g), to obtain review of a decision by the Commissioner of Social

16   Security denying Plaintiff Social Security disability benefits and supplemental security income (SSI).

17   Now before the Court are Plaintiff's Motion for Summary Judgment or Remand (Motion) [Docket No.

18   11] and Defendant's Cross-Motion for Summary Judgment (Cross-Motion)  [Docket No. 12] .

19                                    **BACKGROUND**

20   **A.    Procedural History**

21          Plaintiff applied for SSI benefits pursuant to Title XVI of the Social Security Act (Act) with a

22   protected filing date of June 11, 2003[1], claiming a disability that began on December 17, 2001.  Tr. 64-

23   68.  Plaintiff's claim was denied initially and on reconsideration.  Tr. 21, 26.  A request for a hearing was

24   timely filed on April 4, 2004.  Tr. 30.

25          A hearing was held before an Administrative Law Judge (ALJ) on January 25, 2005 in Oakland,

26   California.  Plaintiff appeared with counsel and testified.  Tr. 290-323.  A vocational consultant, Dennis

27   _____

28        [1]  Tr. 64-68.

United States District Court
For the Northern District of California

Contreras, appeared at the ALJ's request and also testified. *Id.* A further hearing was held before the ALJ on May 26, 2005 to obtain input from a medical consultant. Tr. 11, 326-344. The claimant's boyfriend, Ed Merical, attended both hearings but did not testify. Tr. 290, 326. A medical expert testified at the May 2005 hearing by telephone. Tr. 11.

On July 29, 2005, the ALJ concluded that Plaintiff is not "disabled" within the meaning of the Social Security Act and Regulations. Tr. 17. The ALJ found that "[t]he claimant has the residual functional capacity to perform a full range of all exertional activities, but she is precluded from performing very complicated or complex work." *Id.* Further, the ALJ found that "[t]he claimant is able to perform her past relevant work as a receptionist, a data entry clerk, or administrative clerk." *Id.*

Plaintiff filed a request for review by the Appeals Council on September 12, 2005. Tr. 7. On October 21, 2005, the Appeals Council denied the request for review, making the ALJ's decision final. (Tr. 4.) Plaintiff then filed for review in this Court on December 8, 2005. Docket No. 1. Plaintiff filed her Motion for Summary Judgment or Remand on August 7, 2006. Docket No. 11. On September 1, 2006, Defendant filed her Opposition to Plaintiff's Motion and filed a Cross-Motion for Summary Judgment. Docket No. 12.

Plaintiff failed to file an opposition to Defendant's Cross-Motion. Under this Court's Standing Orders, failure of the opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute consent to the granting of the motion. Standing Ord. ¶8. Plaintiff asked for an extension on September 15, 2006 to respond to Defendant's Cross-Motion Docket No. 13. Plaintiff's reason was the same as two prior requests for extensions: "[the] extension is necessitated by the number of other cases Plaintiff's counsel currently has before the district court that also require briefing." Docket No. 10. On September 20, 2006, the Court denied this request because the Court had already granted two continuances to Plaintiff to file her Motion for Summary Judgment. Docket No. 14. In addition, the Court issued an order on July 17, 2006 stating that "[n]o further continuances will be granted in this matter." Docket No. 10, 14. Plaintiff did not file a reply or opposition to Defendant's Cross-Motion.

**B.      Factual Background**

**1.      Plaintiff's Disability Claim**

In her request for a hearing by the ALJ filed on April 5, 2004, Plaintiff alleged that she is disabled and unable to work because of "anxiety, depression, and severe gout attacks." Tr. 30.  Plaintiff also alleges to be disabled since December 17, 2001 because of high blood pressure and kidney disease. Motion at 3.

**2.      Plaintiff's Testimony**

At the hearing, Plaintiff testified regarding her physical impairments, specifically stating that her gout prevented her from working because she cannot stand and cannot sit for long. Tr. 296.  She explained that she initially thought the pain from her toe was from a previous injury before being diagnosed with gout.  Tr. 295.  She further testified that she had attacks of gout one or two times a month lasting from one to two weeks at a time.  Tr. 298.  When she has these attacks, she cannot do any housework or any work activity because of the pain associated with gout.  Tr. 296.  She would miss five to seven days a month because of her gout.  Tr. 310.  In addition, she testified in regards to her anxiety, panic attacks, and depression.  Tr. 296.  However, when asked if the gout is the most important problem, she replied "Yes."  *Id.*

Plaintiff also described the medications she is taking, including Trazodone (for sleeping), Allopurinol (to prevent gout attacks), Prozac (for depression), and other medications for high blood pressure, heart burn, and pain relief.  Tr. 296, 298-99.  Plaintiff testified that she sleeps 80% of the day,[2] her son and boyfriend do housework for her,[3] and she needs help bathing.[4]  Further, she described her anxiety attacks and admitted that she was not seeing a psychologist, psychiatrist, or any other mental health specialist for treatment of her depression and anxiety.  Tr. 301-04.

---

[2]  Tr. 296.

[3]  Tr. 300.

[4]  *Id.*

**United States District Court**
For the Northern District of California

### 3.      Medical Evidence

#### a.  Mental Impairments

##### i.  Psychological Evaluation by Dr. Ratto

On January 26, 2004, Rosemarie Ratto, PhD. administered a consultative psychological evaluation to Plaintiff at the request of Disability Determination Services (DDS). Plaintiff's mood and affect during the mental status examination was depressed with crying noted. Tr. 161. WAIS-III testing reflected significant weakness on her fund of information, ability to perform mental arithmetic, and on her spatial coordination speed indicating weakness in concentration and attention. Tr. 162. However, a significant strength was noted on her rote memory. *Id.* Dr. Ratto diagnosed Plaintiff with "a Depressive Disorder and an Anxiety Disorder which are likely related to medical problems and pain." *Id.* Dr. Ratto opined that Plaintiff's memory is impaired and adequate for only simple tasks and that she is able to understand primarily simple instructions. *Id.* Lastly, Dr. Ratto concluded in noting that Plaintiff may have difficulty with the stress of employment. *Id.*

##### ii.  Psychiatric Review Technique and Mental Residual Functional Capacity Assessment

On February 4, 2004, Dr. Craig A. Smith completed a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment for Plaintiff at the request of DDS. Tr. 164, 169. On the Psychiatric Review Technique, Dr. Smith found Plaintiff suffered from Depressive Disorder. Tr. 165. Plaintiff also was found to have a "mild" degree of functional limitation under the categories restriction of daily living activities and difficulties maintaining social functioning. Tr. 166. In addition, Dr. Smith rated Plaintiff with a "moderate" degree of functional limitation[5] in difficulties in maintaining concentration, persistence, or pace. *Id.*

On the mental residual functional capacity assessment, Dr. Smith concluded in the "sustained

---

[5] When rating the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), the physician uses a five-point scale: none, mild, moderate, marked, and extreme.   20 C.F.R. §404.1520a (c)(4).

4

concentration and persistence"section that Plaintiff was "moderately limited"[6] in her ability to understand and remember detailed instructions and "moderately limited" in her ability to carry out detailed instructions.  Tr. 167.  In all other areas of the assessment, Dr. Smith found that Plaintiff's abilities were "not significantly limited."  Tr. 167-68.

### b.  Physical Impairments

#### i.  Treatment notes and lab results by Alameda County Medical Center

From May 2001 through December 2004, Plaintiff was treated for hypertension (high blood pressure) and chronic kidney disease (chronic renal failure).  Tr. 184-254.  During the same period, Plaintiff also complained of gout attacks.  *Id.*  However, there are few medically documented records of the swelling usually associated with gout.  Tr. 240-41, 247, 251.  These attacks all occurred in 2002. *Id.*  One progress note dated February 4, 2002 reflects that claimant had refused an appointment with the dietician.  Tr. 249.  Another note dated December 10, 2004 stated that claimant had not been seen in the clinic for one and a half years.  Tr. 196.

Plaintiff also recites a list of lab results in the record indicating abnormally high levels of Creatinine (indicating progressive renal failure, *see* Tr. 146) as well as medical records investigating perceived thyroid issues.  Motion at 12-14 (citing lab results in Tr. 261, 140, 215, 191 and thyroid issues in Tr. 272, 276, 247, 240).

#### ii.  Treatment notes by Highland Hospital (Renal Clinic)

From April 22, 2002 through September 9, 2004, Plaintiff was treated at the Highland Hospital Renal Clinic.  Tr. 137, 184.  As of September 9, 2004, Plaintiff was taking all medication regularly.  Tr. 185.  Plaintiff complained of pain in her toes and the metatarsal joint.  *Id.*  At that date, Plaintiff's hypertension was well controlled with medication.

#### iii.  Evaluation by Dr. Gable

On September 19, 2003, Dr. Gable made an internal medicine evaluation of Plaintiff.  Tr. 145. Dr. Gable noted that Plaintiff has severe hypertension that is currently under good control, but with

---

[6] A "marked" limitation may arise when the degree of limitation seriously interferes with a claimant's ability to function independently, appropriately, effectively, and on a sustained basis.  20 C.F.R. pt. 404 subpt. P app. 1 §12.00 C.  As noted above, a "moderate" limitation is less severe than a "marked" limitation.

progressive nephrosclerosis (renal failure) with rising creatinine levels.  Tr. 149.  During examination, Plaintiff claimed to have gout for three years, that it began in one toe and moved to the other big toe, and that the gout is almost constant with attacks usually lasting three or four days.  Tr. 146.  After looking at Plaintiff's history, Dr. Gable noticed a history of gout, but no history of acute gout.  Tr. 147.  Further, he wrote, "[o]ne may take issue with the fact that she claims that she has had these almost constant attacks, but it is not mentioned in any of these notes except to state that she has had a history of gout."  *Id.*  Further, Dr. Gable stated that Plaintiff is not taking medicine for gout prevention or for treatment of acute gout attacks (such as anti-inflammatory agents).  *Id.*  Dr. Gable flatly stated in his evaluation that he does not believe the story of ongoing gouty attacks because: 1) Plaintiff is not on adequate medicine; 2) Gout would certainly be treated very vigorously in the face of renal failure; and 3) Plaintiff is not on any anti-inflammatory drugs which would be used to treat the disease.  Tr. 149.

During the physical examination of Plaintiff's feet, Dr. Gable noted no increased warmth about the great toe and no redness or swelling.  *Id.*  Plaintiff complained of severe pain around the great toe, to which Dr. Gable opined "clinically did not appear to be present."  *Id.*  Plaintiff entered with a severe limp and sandals on, with open toes, with a cane complaining that she had severe pain in the left great toe.  Tr. 148.  She claimed she could not walk across the room without her cane.  *Id.*  Dr. Gable noted that her gait was markedly abnormal because "she [had at the time] an acute attack of gout, which supposedly has been present for three days."  Tr. 149.

### iv.  Physical Residual Functional Capacity Assessment by Dr. Gable

Dr. Gable found that Plaintiff was limited to lifting or carrying 20 pounds occasionally, 10 pounds frequently, sit, stand and/or walk for a total of 6 hours in an 8-hour workday, and was unlimited in her ability to push and/or pull.  Tr. 152.  In addition, Dr. Gable questioned Plaintiff's credibility and doubted whether the severity of Plaintiff's symptoms and the alleged effect on Plaintiff's functional capacity were consistent with the medical and non-medical evidence.  Tr. 156.

### 4.    Vocational Expert's Testimony

The Vocational Expert (VE) described Plaintiff's past work occupations as an administrative clerk with light exertional requirements, receptionist with sedentary exertional requirements, inventory clerk with medium exertional requirements, and data entry clerk with sedentary exertional requirements.

United States District Court
For the Northern District of California

Tr. 317. The ALJ next gave the VE a hypothetical where the VE assumed the age, education, and work background of Plaintiff and a limitation from complex or complicated instructions. Tr. 317-18. The VE asked and received clarification regarding the phrase "limitation from complex or complicated instructions." Tr. 318. The judge indicated that the limitation from complex or complicated instructions "subsumes the ability to follow simple instructions." *Id.*

The VE testified that the hypothetical individual could perform on the lower end of receptionist jobs. *Id.* The VE clarified his meaning of "lower end" as falling under the "unskilled" category of workers. *Id.* He noted that there are unskilled receptionist jobs in the open labor market even though the job is listed as semi-skilled in the Dictionary of Occupational Titles (DOT). *Id.* The VE estimated that the market for an unskilled receptionist in the local economy holds about 1,400 types of positions while there are over 90,000 positions in the national economy. Tr. 319.

When asked if the hypothetical individual could do unskilled work with a foot elevated, the VE responded that employers would have to make a special accommodation and that employers do not normally accommodate that. *Id.* Further, the VE asserted that work would not be available without accommodation for a hypothetical individual with that special circumstance of having to work with a foot elevated. *Id.*

Plaintiff's counsel modified the hypothetical posed to the VE by asking if Plaintiff could do her past work if she were unable to remember detailed instructions. Tr. 320. The VE responded that the modified limitation would more severely restrict her possibility of doing her previous work. Tr. 321. He stated that a receptionist would have an issue if she could not concentrate "at least at a verybasic level." *Id.* Plaintiff's counsel then added to the hypothetical an assumption that Plaintiff's gout attacks were truthful and that she had to miss work for three to eight days every month. *Id.* The VE responded that Plaintiff would not be able to compete in the open labor market with that type of absenteeism on a consistent basis. *Id.* The VE estimated the normal threshold of absenteeism to be eight to twelve days a year. Tr. 321-22.

### 5.    Medical Expert's Testimony

The ALJ's first question to Dr. Van der Reis was whether Plaintiff's testimony in regards to her gout (as noted above) is medically-supported by the file he reviewed. Tr. 328. Dr. Van der Reis

responded that "[i]t is not compatible with either the records nor normal clinical events." Tr. 329. Dr. Van der Reis restated this conclusion in saying "the symptoms, the attacks she describes, are just not the way normal attacks of gout occur." Tr. 331. His reasoning for this conclusion included the fact that 1) the record does not reflect a complete treatment for the condition, 2) the record does not contain any findings in general that are considered criteria for the diagnosis of gout, and 3) Plaintiff was not taking any medication to abort gout attacks. Tr. 329-30.

The ALJ also took issue with the fact that uric acid levels had not been periodically checked and asked whether this was normal in response to a complaint of gout. Tr. 334. Dr. Van der Reis stated that he would have run the tests and that most physicians would. *Id.* He later stated that severe renal failure, which Plaintiff has, could raise uric acid levels. Tr. 336. The ALJ also asked whether Plaintiff's refusal to see a dietician was inconsistent with the treatment of gout. Tr. 335. The medical expert responded that changes in diet can control the gout. *Id.* Lastly, the medical expert noted that while Plaintiff is depressed, the record lacks any evidence of Plaintiff receiving significant psychiatric care. Tr. 336-37.

## C.   Summary of ALJ's Findings

After consideration of the entire record, the ALJ made the following findings regarding the Plaintiff's alleged disability:

1.   The claimant filed applications for Disability Insurance Benefits and Supplemental Security Income benefits with a protected filing date of June 11, 2003, alleging disability as of December 17, 2001.

2.   The claimant met the special earnings requirements for benefits based on disability under Title II of the Social Security Act at the time of her alleged "disability" and continues to meet those requirements.

3.   The claimant has not engaged in substantial gainful activity since at least December 17, 2001.

4.   The claimant has depression with poor memory, a severe impairment that has lasted over 12 months and which significantly limits her ability to perform basic work activities.

5.   The medical evidence fails to establish that claimant has an impairment or

1    combination of impairments listed in, or medically equal to one listed in

2    Appendix 1, Subpart P, Regulations No. 4.

3    6.    The claimant has the residual functional capacity to perform a full range of all

4    exertional activities, but she is precluded from performing very complicated or

5    complex work.

6    7.    The claimant is able to perform her past relevant work as a receptionist, a data

7    entry clerk, or administrative clerk.

8    8.    The claimant is not "disabled" within the meaning of the Social Security Act at

9    any time beginning December 17, 2001 and continuing through the date of the

10   ALJ's decision.

11   Tr. 16-17.

12   Accordingly, the ALJ concluded that Plaintiff was not disabled, and therefore she was ineligible

13   for Social Security disability benefits and SSI.

14                                    **LEGAL STANDARD**

15   This Court's jurisdiction is limited to determining whether the Social Security

16   Administration's denial of benefits is supported by substantial evidence in the administrative record.

17   42 U.S.C. § 405(g).  A district court may overturn a decision to deny benefits only if it is not

18   supported by substantial evidence, or if the decision is based on legal error.  *See Andrews v. Shalala*,

19   53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The

20   Ninth Circuit defines substantial evidence as "more than a scintilla, but less than a preponderance; it

21   is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

22   *Andrews*, 53 F.3d at 1039.  The Commissioner's decision cannot be affirmed simply by isolating a

23   specific quantum of supporting evidence.  *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998).

24   Rather, the court must "consider the record as a whole, weighing both the evidence that supports and

25   evidence that detracts" from the Commissioner's conclusion.  *Holohan v. Massanari*, 246 F.3d 1195,

26   1201 (9th Cir. 2001).  Where the evidence is susceptible to more than one rational interpretation, it

27   is the ALJ's conclusion that must be upheld.  *Andrews*, 53 F.3d at 1041.

28

## **DISCUSSION**

This Social Security Disability appeal raises the issue whether substantial evidence supports the ALJ's determination that Plaintiff, alleging disability because of gout, hypertension, depression, and anxiety attacks, is capable of returning to past relevant work as a receptionist, administrative clerk, or data entry clerk.  The Court affirms the ALJ's decision.

In considering whether a claimant is entitled to benefits, an ALJ conducts a five-step sequential inquiry. 20 C.F.R. § 416.920.[7] At the first step, the ALJ considers whether the claimant is engaged in substantial gainful activity.  If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step and considers whether the claimant has a severe impairment (i.e. an impairment that has a significant effect on the claimant's ability to function).  If the claimant has a severe impairment, the third step asks whether the claimant has a condition which meets or equals the conditions outlined in the Listings of Impairments in Appendix 1 of the Regulations (the "Listings").  If the claimant does not have such a condition, the fourth step asks whether the claimant is capable of performing her past relevant work.  If the claimant is not capable of performing past relevant work, the fifth step asks whether the claimant is capable of performing other work which exists in substantial numbers in the national economy.  20 C.F.R. § 404.1520(b)-404.1520(f)(1).

Here, Plaintiff contends that the ALJ erred at step four of this five-step process.  Pl.'s Mot. at 4.  She makes five arguments in support of this assertion: 1) the ALJ's finding of Plaintiff's limitation from performing very complicated work is inconsistent with the record; 2) the ALJ's hypothetical to the VE was improper; 3) the ALJ improperly ascertained the demands of Plaintiff's prior work experiences; 4) the ALJ improperly rejected a portion of the VE's testimony regarding a receptionist position; and 5) the ALJ erred in using a "mental sit and squirm test" in considering Plaintiff's credibility.  Mot. at 2.  The Court will examine each issue accordingly to determine whether substantial evidence supports the ALJ's findings.  *Andrews*, 53 F.3d at 1039.

---

[7] The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The burden of proof is on the claimant as to steps one to four.  At step five, the burden shifts to the Commissioner.  If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, there is no need to consider subsequent steps.

**A.      Whether the ALJ acted improperly in making his RFC determination**

The ALJ found that Plaintiff "has the residual functional capacity to perform a full range of all exertional activities, but she is precluded from performing very complicated or complex work." Tr. 17.  Plaintiff argues the ALJ did not "reflect all of the assessments and limitations" in the medical record where the examining and reviewing physicians determined that Plaintiff was limited to performing "simple, repetitive tasks."  Motion at 17.  Further, Plaintiff claims that the ALJ "wrongly deduces that a limitation to performing simple, repetitive tasks is the same as a preclusion from performing very complicated work."  *Id.*  Defendant responds that the ALJ's RFC finding was proper because the ALJ clearly understood how Dr. Ratto and Dr. Smith characterized their opinions of Plaintiff's ability.  Cross-Motion at 3-4.

Substantial evidence supports the ALJ's finding because Plaintiff's limitation retains the same meaning when using either phrase.  The Ninth Circuit defines substantial evidence as "more than a scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews*, 53 F.3d at 1039.  Plaintiff alleges that the ALJ wrongly inferred that a limitation to performing simple, repetitive tasks is the same as a preclusion from performing very complicated work in determining Plaintiff's mental residual functional capacity.  Motion at 17.  She claims "[n]o Agency regulation or Ruling supports such a proposition."  *Id.*  However, Plaintiff fails to cite any authority that supports her assertion that a different interpretation exists.  In the absence of an agency regulation or judicial ruling, the Court turns to the plain language of the phrases.  The phrases "simple, repetitive tasks" and "very complicated work" describe two extremes in complexity of work.  Therefore, a claimant who is limited to performing simple, repetitive tasks must also be precluded from performing very complicated work because to hold otherwise would defy common sense.  Thus, the Court finds adequate evidence in the plain language to support the ALJ's inference.

Plaintiff also alleges that the ALJ's mental residual functional capacity finding was "incomplete and / or inconsistent."  *Id.*  The Court fails to see any inconsistency in the ALJ's finding.  The ALJ relied on the opinions of state agency reviewing psychiatrist Craig A. Smith, M.D. and examining psychologist Rosemarie Ratto, Ph.D.  Dr. Ratto opined that Plaintiff had "memory

1    sufficient only for simple tasks" and that she was able to understand "primarily simple instructions."

2    Tr. 15, 162.  Dr. Smith concluded that Plaintiff "would be able to perform simple, repetitive tasks."

3    Tr. 15, 169.  As noted above, the preclusion of very complicated work is a natural and logical

4    inference from a limitation to performing simple, repetitive tasks.  Additionally, Plaintiff has failed

5    to show a different meaning exists between the phrases,[8] and she fails to show any other

6    inconsistencies.  As a result, the Court declines to disturb the ALJ's finding of Plaintiff's mental

7    residual functional capacity.

8    **B.      Whether the ALJ properly phrased his hypothetical to the VE**

9         Plaintiff alleges that the ALJ's hypothetical to the VE was improper because the hypothetical

10   asked the VE to assume "a limitation from complex or complicated instructions." Tr. 318.  Plaintiff

11   argues that this is error because the State Agency physicians described Plaintiff's impairment as a

12   limitation to performing simple, repetitive tasks and receiving simple instructions.  Tr. 15, 162, 169.

13   Again, the Court is unpersuaded by this line of argument.  The VE asked for clarification on the

14   hypothetical.  Tr. 318.  The ALJ responded to the VE's question by saying, "[that limitation]

15   subsumes the ability to follow simple instructions." *Id.*  This reasoning is in line with the Court's

16   reasoning outlined in Part A above.  As a result, Plaintiff's argument fails.

17        Plaintiff further alleges that the hypothetical assumptions were incomplete because the

18   assumptions did not include Plaintiff's limitation to simple, repetitive tasks.  Pl.'s Mot. at 18.   An

19   opinion based on flawed hypothetical assumptions has no evidentiary value.  *Embrey v. Bowen,* 849

20   F.2d 418, 422 (9th Cir. 1988).  In *Embrey*, however, the ALJ's hypothetical improperly assumed that

21   the Plaintiff could sit and stand alternately where the Plaintiff's testimony and medical testimony

22   clearly contradicted that assumption.  *Id.* at 423.  Here, the ALJ made it clear to the VE that the

23   assumption in the first hypothetical included the ability to follow simple instructions.  Tr. 318.

24        Plaintiff claims that the ALJ's second hypothetical was incomplete because it did not

25   reference a limitation to performing simple, repetitive tasks.  Pl.'s Mot. at 18.  In the hypothetical,

26   Plaintiff's counsel refined the assumption to an "inability to remember detailed instructions" as

27   _____

28        [8] Plaintiff has failed to show whether either phrase has acquired a secondary meaning or trade
     usage.  *See* 21A AM. JUR. 2D *Customs and Usages* § 38 (2007).

United States District Court
For the Northern District of California

opposed to "complex" instructions. Tr. 320. The VE noted that Plaintiff's previous work required, "at a very basic level," the ability to convey information on a consistent basis. Tr. 321. Plaintiff mistakenly characterizes this statement by the VE as "concern as to whether such an individual could even perform 'unskilled' 'Receptionist' occupations." Pl.'s Mot. at 18. As noted above, the ALJ had a reasonable basis for finding that Plaintiff had the ability to follow simple instructions and carry out simple, repetitive tasks. Tr. 15, 162, 169. At the hearing and on the papers, Plaintiff failed to show her alleged inability to convey information on a consistent basis. Furthermore, the VE's comment regarding the inability to convey information appears to be informative rather than in direct response to the posed hypothetical. This suggests that the VE fully understood the hypothetical. Thus, the ALJ properly inferred from the VE's response to the second hypothetical that Plaintiff would be able to do simple unskilled work. Tr. 16. Because the record clearly supports this inference, this Court declines to disturb the ALJ's finding because both hypotheticals were proper.

**C.      Whether the ALJ properly determined that Plaintiff could return to past relevant work**

Plaintiff alleges that the ALJ erred in determining that Plaintiff was capable of returning to her past work because he misstated the demands of her past relevant work. Pl.'s Mot. at 19. Defendant responds that the ALJ properly determined that Plaintiff could return to her past relevant work by reasonably relying on the record. Cross-Mot. at 6. The Court agrees with Defendant.

In order to determine that a claimant can return to her past relevant work, the ALJ is required to determine the claimant's RFC, determine the demands of her past work, and determine whether her RFC permits a return to that past work either as it was performed by the claimant or as it is generally performed in the national economy. Social Security Ruling (S.S.R.) 82-62 (1982). As discussed above, the ALJ properly determined Plaintiff's RFC as being limited only in her ability to perform very complicated work. Tr. 16. Plaintiff claims that the ALJ erred in determining the demands of her past relevant work because he incorrectly described Plaintiff's previous work as being generally performed at an "unskilled" level. Pl.'s Mot. at 19; Tr. 16. Plaintiff also argues that the ALJ failed to compare Plaintiff's RFC with the demands of her past relevant work. Pl.'s Mot. at

United States District Court
For the Northern District of California

1    20.  The Court disagrees with Plaintiff in both instances.

2

3        **1.  Whether the ALJ erred in determining the demands of Plaintiff's past relevant work**

4        As background, Plaintiff's past relevant work experience consists of approximately four

5    years as a receptionist /data entry clerk, two years as an inventory clerk, three years as an

6    administrative assistant, one year as a gas station attendant, and four years as a temp agency

7    employee performing various clerical work.  Tr. 127.  The VE testified that Plaintiff's past

8    occupational titles include administrative clerk, receptionist, inventory clerk, and data entry clerk.

9    Tr. 317 (citing DICTIONARY OF OCCUPATIONAL TITLES (DOT), U.S. Dep't of Labor, 4th ed., rev.

10   1991, §§ 219.362-010, 237.367-038, 222.387-026, and 203.582-054, *available at*

11   http://www.oalj.dol.gov/LIBDOT.HTM).  The ALJ concluded that Plaintiff would be able to return

12   to her past work as a receptionist, administrative clerk, and data clerk.  Tr. 16.

13       Plaintiff relies heavily on the DOT and a policy interpretation ruling to prove that she

14   actually performed her past relevant work at a "semi-skilled" level.  The DOT is an authoritative

15   source, but it is not binding.  Pl.'s Mot. at 20 (citing 20 C.F.R. § 416.966(d)(1); S.S.R. 00-4p).

16   Plaintiff informs the Court that the VE did not say a receptionist generally performs work at an

17   "unskilled" level.  Pl.'s Mot. at 19.  Plaintiff reasons that, by virtue of her job title, she actually

18   performed at a semi-skilled level.  However, this fails to controvert the VE's testimony that a worker

19   with Plaintiff's limitation could go back to Plaintiff's past work at the lower end of receptionists.

20   Tr. 318.  Although S.S.R. 82-61 states that the DOT can be relied upon to define the job as it is

21   usually performed in the national economy, it is understood that some individual jobs may require

22   somewhat more or less exertion than the DOT description.  S.S.R. 82-61. Besides her reliance on the

23   DOT, Plaintiff fails to submit any other evidence that shows her past relevant work as a receptionist

24   was actually performed at a "semi-skilled" level rather than at an "unskilled" level.

25       Plaintiff alleges the demands of Plaintiff's past work is at a "semi-skilled" level because the

26   DOT lists the Specific Vocational Preparation (SVP) level of a receptionist job as "semi-skilled."

27   Plaintiff explains that "semi-skilled work corresponds to an SVP of 3-4." Pl.'s Mot. at 19, n.114

28   (citing S.S.R. 00-4p).  Unskilled work, on the other hand, corresponds to an SVP of 1-2. S.S.R. 00-

**United States District Court**
For the Northern District of California

14

4p.  The SVP level of a receptionist is listed in the DOT as "4." DOT § 237.367-038.  Plaintiff argues that the ALJ wrongfully determined that Plaintiff's past receptionist job only demanded an "unskilled" level because the DOT clearly requires a "semi-skilled" level.  Pl.'s Mot. at 19; Tr. 16.  The Court recognizes that in determining the demands of her past work, the ALJ found that "claimant's jobs generally were at a low semi-skilled level."  Tr. 16.  Additionally, the work history as declared by Plaintiff and accepted into the record by the ALJ[9] seems to match the description of a semi-skilled receptionist in the DOT.[10]  The Court also notes that Plaintiff had worked other similar jobs in the past decade.  *See* Tr. 118, 120-22, 124-25.

However, the ALJ properly relied on the testimony of the VE because the VE "may be able to provide more specific information about jobs or occupations than the DOT."  S.S.R. 00-4p.  A properly completed Vocational Report may be sufficient to furnish information about past work.  S.S.R. 82-61.  For those instances where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, the services of a vocational expert may be utilized.  *Id.*  The VE indicated that although receptionists are listed in DOT under the "semi-skilled" category, "unskilled" receptionist jobs exist in the open labor market.  Tr. 318.  The ALJ resolved this conflict by asking the VE, "[because] the DOT is an average[,] some of the receptionist jobs would be at a relatively unskilled level?"  *Id.*  The VE responded, "Yes."  *Id.*  Defendant points out that Plaintiff failed to object to this assertion.  Cross-Motion at 3, 6 (citing Tr. 318-22).  As a result, this Court upholds the ALJ reliance on the VE's testimony because the ALJ

_____

[9] Plaintiff described her job as a receptionist / data entry clerk: "Input into database, extended car insurance policies and monthly billing information, answer and direct incoming calls, print and distribute billing statements."  Tr. 119.  In response to a question asking how much lifting and carrying she did on her job, she wrote "I had to put computer paper into the printer and then I had to separate the reports and then put them in the proper location in the proper mailing order or prepare them for the office files."  *Id.  See also* Plaintiff's testimony where she stated that her work as a receptionist was "more of a general office type" job.  Tr. 293-94.

[10] A receptionist "[r]eceives callers at establishment, determines nature of business, and directs callers to destination: Obtains caller's name and arranges for appointment with person called upon.  Directs caller to destination and records name, time of call, nature of business, and person called upon.  May operate PBX telephone console to receive incoming messages.  May type memos, correspondence, reports, and other documents. . . . May perform variety of clerical duties [ADMINISTRATIVE CLERK (clerical) 219.362-010] and other duties pertinent to type of establishment.  May collect and distribute mail and messages."  DOT § 237.367-038.

United States District Court
For the Northern District of California

1  properly relied on the VE's uncontested testimony to determine that Plaintiff's past receptionist job

2  required only an "unskilled level."

3      Upon further examination, the Court also finds that the ALJ's interpretation of the evidence

4  was rational.  Where the evidence is susceptible to more than one rational interpretation, it is the

5  ALJ's conclusion that must be upheld.  *Andrews*, 53 F.3d at 1041.  SVP is defined as "the amount of

6  lapsed time required by a typical worker to learn the techniques, acquire the information, and

7  develop the facility needed for average performance in a specific job-worker situation."  App. C § II

8  to DOT.[11]  At SVP level 2, the time lapsed is defined as "[a]nything beyond short demonstration up

9  to and including 1 month."  *Id.*  At SVP level 4, the time lapsed is defined as "[o]ver 3 months up to

10  and including 6 months." *Id.*   However, the ALJ found that "claimant's jobs generally were at a low

11  semi-skilled level."  Tr. 16.  At SVP level 3, the time lapsed is defined as "[o]ver 1 month up to and

12  including 3 months."  App. C § II to DOT.  Thus, the main difference between semi-skilled and

13  unskilled work that is contested here is a maximum of two months of specific vocational training.[12]

14  The ALJ carefully and reasonably interpreted the evidence presented to him, which included

15  objective medical evidence, Plaintiff's subjective testimony, the VE's testimony, and his own

16  experience, in finding that Plaintiff could return to her past relevant work because it consisted

17  generally of unskilled jobs.  *See* Tr. 11.

18      While the Court recognizes that the ALJ did not specifically cite why he determined that

19  Plaintiff's past jobs were at a "low semi-skilled" level,[13] the Court declines to adopt Plaintiff's legal

20  arguments.  Plaintiff asked the Court, in a footnote, to take notice of her work history as evidence

21  that Plaintiff's past work was "semi-skilled."  Motion at 20, n.118 (citing Tr. 119).  After

22  examination of the record, the evidence in this case may yield multiple reasonable interpretations.

23  Consequently, this Court affirms the ALJ's determination of the demands of Plaintiff's past work as

24  being at an unskilled level because the Court cannot disturb the ALJ's finding where it is reasonable.

25  _____

26      [11] *Available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

27      [12] Specific vocational training includes: vocational education, apprenticeship training, on-the-job training, and essential experience in other jobs.  App. C § II to DOT.

28      [13] Tr. 16.

16

1

2

3    **2.  Whether the ALJ properly considered whether Plaintiff retained the residual**

4    **functional capacity to return to her past work**

5    Plaintiff alleges that the ALJ erred by finding that Plaintiff retained the RFC to return to her

6    past work. Pl.'s Mot. at 21.  The ALJ must consider the demands of her past relevant work as

7    actually performed or as generally performed in light of her RFC. S.S.R. 82-61.  As previously

8    noted, objective medical evidence, other statements in the record, and Plaintiff's testimony supports

9    the ALJ's RFC finding.  Tr. 14-16.  In addition, the ALJ found that Plaintiff was able to return to her

10   past work because Plaintiff retained the RFC to return to her past work as actually performed.  Tr.

11   16.  In support of this conclusion, the ALJ relied on the VE's testimony that a hypothetical

12   individual could perform, at the lower end, a receptionist job.  Tr. 16, 318.  The ALJ found that

13   receptionist work, according to the VE, varies considerably in complexity level and includes

14   "unskilled" work.  Tr. 16.  For these reasons, the ALJ found that in addition to a receptionist job,

15   Plaintiff could also return to her past relevant work as data entry clerk and administrative clerk in

16   light of her preclusion from complicated or complex work.  *Id.*

17   Plaintiff does not make substantive arguments; instead, she makes unsupported conclusory

18   statements devoid of legal analysis.[14]  However, Plaintiff seems to argue that her RFC prevents her

19   from performing her past work.  *See* Pl.'s Mot. at 21.  In the DOT, the General Educational

20   Development (GED) reasoning level of a receptionist is 3.  DOT § 237.367-038.  This level of

21   reasoning requires a worker to "[a]pply commonsense understanding to carry out instructions

22   furnished in written, oral or diagrammatic form" and to "[d]eal with problems involving several

23   concrete variables in or from standardized situations."  App. C, § III to DOT.  At GED reasoning

24   level 2, one below the level required to be a receptionist, a worker is required to "[a]pply

25   commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to

26   _____

27   [14] The Court is not persuaded by unsupported statements such as "[t]he record does not support
a finding that Boykin could return to her past relevant work" and "[t]he ALJ's mental [RFC] can only
28   be read as concluding that Boykin cannot perform the tasks of a 'Receptionist' either as she performed
it, or as 'generally performed' in the national economy."  Pl.'s Mot. at 20-21.

"[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* Arguably, Plaintiff's RFC, rephrased as a preclusion from remembering detailed instructions by Plaintiff,[15] would not even meet the reasoning level of "unskilled" work.

A person who is precluded from "remembering detailed instructions" probably would not be capable of performing a job with a GED reasoning level of 2.  However, the VE testified that someone who could not concentrate "at least at a very basic level" would have an issue with performing unskilled receptionist jobs.  Tr. 321.  No medical source has determined that Plaintiff could not concentrate "at a very basic level."  Notably, Dr. Smith concluded that Plaintiff was only "moderately limited" in her ability to understand and remember detailed instructions and "moderately limited" in her ability to carry out detailed instructions.  Tr. 167.  While Dr. Ratto opined that Plaintiff's memory is impaired and adequate for only simple tasks, she also believed that Plaintiff is able to understand primarily simple instructions.  Tr. 162.  The objective medical evidence concludes that Plaintiff maintains some degree of concentration.  Thus, Plaintiff's argument fails for a lack of objective medical evidence to support her claim that she cannot concentrate "at a very basic level."

Plaintiff also states that her RFC cannot be read to conclude that she can perform the tasks of a receptionist as generally performed in the national economy. Pl.'s Mot. at 21.  Because the ALJ reasonably found that Plaintiff could return to work as she actually performed it by relying on the VE's testimony, the analysis stops there.

Lastly, Plaintiff appears to argue that the ALJ "still has a duty to make requisite factual findings to support his conclusion," even though the burden is on the Plaintiff to prove that she can no longer perform her past relevant work.  Pl.'s Mot. at 20.  As shown, the ALJ made the requisite factual findings to support his conclusion.  Tr. 16.  Plaintiff has not proven to the Court anything to the contrary.  The Court declines to disturb the ALJ's determination that Plaintiff retains the RFC to return to her past work.

### 3.  Whether the ALJ erred in making the disability determination at step four

---

[15]  Tr. 320-21.

United States District Court
For the Northern District of California

Plaintiff alleges that the ALJ erred in determining disability at step four rather than at step five.  Pl.'s Mot. at 21-22.  The Court finds that Plaintiff failed to show that Plaintiff was harmed as a result of this alleged reversible error.  Nonetheless, the Court finds substantial evidence as discussed above that the ALJ would have denied Plaintiff benefits at step five as well.  Assuming that Plaintiff is not capable or performing past relevant work because it is semi-skilled, the burden shifts to the Commissioner to prove that Plaintiff is capable of performing other work that exists in substantial numbers in the national economy.  20 C.F.R. § 404.1520(f)(1).  The VE testified that a hypothetical worker with Plaintiff's limitations (a preclusion from very complicated or complex work) would be able to perform work as an unskilled receptionist.  Tr. 318.  Furthermore, the VE testified that there are more than 90,000 unskilled receptionist jobs in the national economy.  Tr. 319.  Clearly, this satisfies step five in the sequential analysis.  Thus, if error occurred, it was a harmless error.

**D.      Whether the ALJ properly accepted the VE's testimony into evidence**

Plaintiff alleges that the ALJ improperly rejected the VE's testimony regarding a hypothetical because the ALJ failed to give reasons for rejecting the testimony.  Motion at 22. Plaintiff asserts that the ALJ rejected the portion of VE's testimony stating that an individual who "could not concentrate at least at a very basic level" would not be able to perform even unskilled work.  Motion at 22; Tr. 321.  However, the ALJ accepted and considered this portion of the VE's testimony as consistent with the medical and other evidence before him.  Tr. 16.  Again, Plaintiff fails to point to objective medical evidence suggesting that she is unable to concentrate "at a very basic level."  To the contrary, Dr. Smith concluded that Plaintiff was only "moderately limited" in her ability to understand and remember detailed instructions and "moderately limited" in her ability to carry out detailed instructions.  Tr. 167.  In all the other categories under "sustained concentration and persistence," Dr. Smith found that Plaintiff was not significantly limited.  Tr. 167-68.  Likewise, Dr. Ratto opined that Plaintiff's concentration and attention span appeared adequate in her ability to focus on test questions.  Tr. 161.  Additionally, she could recite the entire alphabet without errors. *Id.*  Thus, the ALJ properly accepted the VE's testimony into evidence.

**E.      Whether the ALJ properly assessed Plaintiff's credibility**

In determining Plaintiff's residual functioning capacity (RFC), the ALJ considered not only

United States District Court
For the Northern District of California

the objective medical evidence, but also the claimant's subjective symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence.  Tr. 15-16; *see Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (stating that a claimant's self-serving statements may be disregarded to the extent they are unsupported by objective findings).  An ALJ's credibility finding must be properly supported by the record and sufficiently specific to assure a reviewing court that he did not arbitrarily reject a claimant's subjective testimony.  *Bunnell v. Sullivan*, 947 F.2d 341, 345-47 (9th Cir. 1991).  If the ALJ's credibility finding is supported by substantial evidence in the record, this Court may not engage in second-guessing.  *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ in this case gave specific, clear and convincing reasons for discounting Ms. Boykin's testimony.  While finding no objective medical evidence to support Ms. Boykin's description of her panic attacks, the ALJ also found that Ms. Boykin was able to enjoy a fairly full daily life based on other statements in the record.  Tr. 15.  In her testimony, Plaintiff described how the severity of her panic attacks left her unable to perform most of her daily living activities.  Tr. 296.  However, the ALJ found that Plaintiff's testimony was contradicted because statements in the record indicated that she performed light household cleaning, light laundry, personal shopping, and spending time with her family several times a week.  Tr. 15 (citing Tr. 161, 103-09, 112-17).  The ALJ also noted that Plaintiff's statements were internally inconsistent because on the one hand, she alleged that she does not engage in social activities because people make her nervous and anxious, while on the other hand, she stated that she spent time with her family several times a week.  Tr. 15 (citing Tr. 115).  Further, the ALJ noted that her anxiety does not prevent her from interacting with others because she has a regular boyfriend who accompanied her to both hearings.  Tr. 15.  For these specific reasons, the ALJ concluded that Plaintiff's inconsistency in statements diminished her credibility and the lack of treatment records that might explain this inconsistency further undercuts her claims.  *Id.*  Thus, the Court finds clear and convincing reasons for discounting Plaintiff's testimony.

Plaintiff also argues that the ALJ improperly used a "mental sit and squirm" test to determine Plaintiff's credibility with respect to Plaintiff's allegation of depression.  Pl.'s Mot. at 23-24.  While

Plaintiff cites the general principle that an ALJ should not substitute his lay opinion for the medical opinion of experts[16], the ALJ correctly considered Plaintiff's demeanor in the context of the objective medical evidence revealing that Plaintiff had not sought nor had been referred to psychiatric treatment.  Tr. 15.  The ALJ noted that while "sometimes people are ignorant of the need to see mental health professionals," he became suspicious when "this ignorance is also accompanied by a lot of physical complaints" and the "discrepant behavior noted" by the physicians.  Tr. 16.  Furthermore, the ALJ was not alone in questioning Plaintiff's credibility.  Tr. 13-14, 147-49, 328-43.  Both physicians took notice that Plaintiff was not taking prescribed medications nor receiving treatment consistent with a diagnosis of severe gout.  Tr. 149, 329-43.  As a result of recognizing these inconsistencies, using "'ordinary techniques of credibility evaluation' and providing specific, clear and convincing reasons, supported by the record," the ALJ properly discredited Plaintiff's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (quoting *Bunnell,* 947 F.2d at 346).  Consequently, this Court affirms the ALJ's credibility finding.

### CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Plaintiff's Motion for Summary Judgment or Remand [Docket No. 11] is DENIED.  Defendant's Cross-Motion for Summary Judgment  [Docket No. 12] is GRANTED.

IT IS FURTHER ORDERED THAT the Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.


Dated:  3/30/07

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[16] *See Ratto v. Shalala,* 839 F. Supp. 1415, 1427 (D. Or. 1993).